IN THE MATTER OF THE ESTATE OF S. ANTOLDI, DECEASED.
[No. 26,972; decided September 9, 1903.]

Olographic Will—Revocation of Probate.—The Application in this Case for the revocation of the probate of an olographic will, on the ground that the second date line which was essential to complete the instrument was not in the handwriting of the testator, was denied.

Application for revocation of probate of olographic will.

Reuben W. Hent and Augustus D. Splivalo, for the contestants.

Garret W. McEnerney, for the respondent.

COFFEY, J. "If the second date line was written by the testator, it must have been inserted after the document had been written, and after he had acquired knowledge that the first date line was defective, and would invalidate the instrument. The paper bears intrinsic evidence that the second date line was so written. It may be ascertained upon examination by any intelligent person that there are essential differences between the penmanship in that second date line and the first."

Those are the first points made by Judge Hent, and I think it is very likely that that is the fact, that was the fact, that that second date line was not written at the time the first date line was written, and I think also that it is a good argument that a man of testator's intelligence, or of any intelligence, would hardly be likely to have written that second date line after he had written the first, unless he had just been instructed that that was a defective date.

The supreme court, the other day, in deciding a case, said that it will not do for trial courts to decide upon conjectures; that they ought to decide according to the facts and evidence before them. What are the facts that are before us here? If the case were to be submitted upon the testimony produced by the contestant, there would be no great difficulty in the decision, because we find here that Mr. Splivalo's testimony is direct and unequivocal to the point that the second

dated line was not in the instrument when he inspected and copied it on the thirteenth day of June, 1902. Mr. Corbett also saw it and made a copy, which was without the second dated line. The copy made by young Mr. Splivalo, to which he testified, also omitted that line, and he said, "If it had been there, he would have copied it as he did the other parts of the paper." He was not as absolute in his testimony as Mr. Splivalo, Sr., was, nor as Mr. Corbett was, because he could only put it in that form, that "he was so careful to make a correct copy of everything that he saw there, that if that line had been there he would have copied it"; but he did not swear positively that it was not there; he could not swear to that. Young Mr. Splivalo showed a great deal of caution and care and propriety in the manner in which he testified, and he is to be commended for that, because he was evidently conscientious in what he testified to.

It is certainly a singular coincidence that these three persons should, in copying, have omitted that line, if it was there.

Mr. Splivalo's correspondence with the heirs, and the contest, all assumed that there was no such line, and that the instrument was invalid because of the defective date in the first line.

Dr. Ames, the handwriting expert, pointed out what he considered important discrepancies between the two lines, and gave his opinion that the two date lines were not written by the same person; he took certain measurements, which showed that there was a certain degree of care superior in the second dated line to what was in the first date line; that it was written, as Mr. Splivalo says, "more labored." That would, of course, carry out the theory, or would be in consonance with the theory of Judge Hent, that this was inserted afterward, and that the testator had received some instructions in the premises. Having received instructions, he would necessarily impart more care to the production of the second line than he did to the first. The first was written in the manner that he wrote his ordinary business correspondence; he wrote down the first date spontaneously, an unconscious habit, but on the second dating his mind was upon the legality of the operation; and, therefore, when he wrote that line,

he wrote with greater care and circumspection. Now, that would be common to him and to a forger; the forger, of course, having in mind the characteristics that he must copy, would necessarily be "more labored" in his writing than a spontaneous penman. So would a man who was endeavoring to comply with a law with which he had just become acquainted.

Take this envelope—Respondent's Exhibit 2—which is admitted to have been in his handwriting. "San Francisco" in second dated line of the will and the "San Francisco" in the exhibit, at least the "Francisco" have elements in common. Take the "F" and the other letters; take the "c," for instance, upon which such stress was laid by Dr. Ames, the expert, and also by Mr. Splivalo, who claimed that it was retouched. Mr. Splivalo said that there were three "stoppages" there, and that it did not "assimilate" with the remainder of the writing upon the same page. There seem to be "stoppages" and a lack of "assimilation" in this small "c" upon the envelope, and yet it is admitted to be in the handwriting of the decedent, S. Antoldi.

Now, these are all the conjectures, and one might speculate on those matters without end; but the question here is, What is the positive testimony in this case? On which side does the direct evidence preponderate? I have great respect for Mr. Splivalo and for his son, and so far as I know Mr. Corbett, he is a credible witness. These three gentlemen are entitled to credit. Mr. Benussi, another witness for contestant, however, declined to commit himself to the proposition, although he was obviously introduced for the purpose of showing that that date line was not there when he first saw it, but he would not so testify. He could not, by any process of suggestion, or by reviver of his recollection, be induced to testify that that line was omitted.

On the other side, as against this contention, what have we in the shape of positive testimony in reference to the alleged defect in this instance? Mr. Casey, the chief deputy county clerk, is an official and entitled to credit, not because he is an official exactly, but he is not impeached as a witness. In his official character it was his function to make a certificate. He does that every day upon request. He did make

that certificate. He made a charge for that service and for filing the will for probate, and he made an entry of that charge and the receipt of the money in his cash-book. All these simultaneous acts support his statement here, as a matter of recollection of what was done. Mr. Casey is certainly entitled to equal credit with anybody that opposes him. His testimony, unimpeached, has a right to reception by the court. It is in a sense contradicted, but not impeached. This certified photographic copy is an official paper and has come from an official source. It is corroborated by the entry in an official book, and, also, by the independent testimony of the official himself, and in that respect it is an item of positive evidence that cannot be disregarded.

We have also the testimony of Mr. McEnerney himself, that he was visited at his house at 7 o'clock in the morning and this paper produced to him by Mr. Morbio in a sealed envelope. Mr. Morbio professed not to know what was in it, and there and then the envelope was opened and this instrument brought forth, just in the state that it is now. This is the direct and positive testimony of Mr. McEnerney, who has an equal claim to credence with his antagonist. He said that subsequently he sent and had the instrument photographed, judging from his experience that it was a proper thing to do. Then the photograph having been made, the paper was on that same day taken to the county clerk's office and filed, and the annotations made on the photographic copy by three persons to correspond to his notion of what would be necessary in case the original document were lost. The chief deputy clerk, Mr. Casey, indorsed upon the original a description of the document and the fact that it was filed at that time, and then, having compared the will with the photographic fac-simile, extended his certificate as to the trueness of the copy, and attached the same thereto with the impression of the official seal. Mr. Casey's statement is sustained by the appearance of the documents and by other testimonies. The photographer, Petersen, testified that there was no alteration in the original instrument and no doctoring of the photographic copy. Mr. Newbert, the agent of the public administrator, testified that the will had the second date line in it when he first saw it on the day of filing. Mr. R. W. Harri-

son testified to the same effect.  Mr. Morbio, the respondent, testified that he knew nothing of the tenor of the testament or the contents of the envelope when he handed it to Mr. Mc-Enerney.  Mr. Morbio, as guardian of his child, is a party in interest, to be sure, but that does not discredit him.  Measurably, moreover, it appears that Mr. Splivalo is a party in interest, under a contract, with his clients, not to the same extent as Mr. Morbio, but he is a party in interest, yet I would not think for a moment that that interest would infect the testimony of Mr. Splivalo.  I have too much respect for him, and have too high an opinion of his veracity.  But in order to sustain his cause, he must show that there is a preponderance of proof upon his side.  The burden is upon him, in other words, and must be borne by him.

Mr. Hent concluded his argument, and then he said: ''One word more.  It was certainly a singular performance and remarkable to arouse an attorney from his slumbers at 4 o'clock in the morning, to advise him of the death of Antoldi, at 2 o'clock—two hours before—and of the existence of a will; and the subsequent proceedings, as testified to by Mr. McEnerney, were extraordinary in respect to the haste with which the paper was photographed and filed on the very day of the death of the deceased, and before 4 o'clock in the afternoon.  Why such haste?''

Mr. Splivalo repeated that remark and commented upon this phenomenon.  Mr. McEnerney replied to Mr. Hent: ''I will tell you why: because there were land pirates then, as there are now, and it was necessary to take these precautions to protect the property.''

This remark has necessarily no offensive personal allusion to the parties in this controversy, and would not be permitted by the court to be so interpreted, but, on general principles, it was suggested by the experience of the gentleman in connection with the Fair estate, to which he alluded; and it is a notorious fact that in two or three instances, or more, wills have been abstracted from the files.  The advice was prudent and might apply to all cases; and it may be said that this court has frequently so advised persons in similar situation, and in that case they are to an extent protected against any abstraction or mutilation or tampering with the document.

If Mr. Splivalo, in this instance, had made a photograph, instead of relying upon a manuscript copy, as he conceived it to be, and as he in good faith thinks it was, he might be said to have a better case here, because that photograph would have revealed the omission of the second date; and, consequently, his theory that that date was subsequently imported into this document might be without successful contestation. But he did not do that. He is compelled to depend upon these copies in which mistakes are very often committed. There are frequently material errors in them, errors of omission and errors of commission. But with all the imperfections of the photographic fac-similes, they are as nearly infallible as anything of that kind can be in black and white. Moreover, this particular photograph is authenticated, officially and otherwise, in a manner to compel assent to its accuracy.

Mr. Hent made a very strenuous endeavor to destroy the value of the testimony of Mr. Petersen, the photographer, without any success whatever, in attempting to show, what would necessarily impute infamy to the witness, that it was not only possible, but probable, and no doubt the fact, that there were two photographs, two negatives taken and copied from, making a sort of composite, so that this document could have been produced in that fraudulent and criminal way. The photographer denied that that could be done. It had not been done within his experience. There is no proof from any other photographer that it could be done, or had been done, in any other case. There is Mr. Petersen. He is interested only to the extent of compensation. It appears that he received $12 from Mr. McEnerney for doing this work "in a rush." He received $20 subsequently from Mr. Splivalo for making some enlarged copies of the instrument, which took him four days, and he made the charge more for the greater time consumed the second time. Petersen had stated in answer to Mr. Hent that the first time took two days, but when on the stand and he was shown his memorandum and a statement of account from Mr. Backus, his late principal, it appeared it was done that very day—June 11, 1902.

This man is in no wise impeached. He is not contradicted in any way at all, so far as he is related to the case, and his testimony must be accepted.

The arguments of Mr. Splivalo and of Mr. Hent, apart from the recitals as to the making of the copies, are all conjectural. The facts are on the other side, except as to the statements of Mr. Splivalo, his son, and Mr. Corbett, which must, so far as the court is concerned, be subordinated to the preponderant proof.

The court denies the application to revoke the probate of this will.